UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Gary Paul Bashaw,

    Plaintiff,

    v.      Civil Action No. 2:13-cv-61

Commissioner of Social Security,

    Defendant.

**OPINION AND ORDER**
(Docs. 16, 19)

Plaintiff Gary Paul Bashaw brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits.  Pending before the Court are Bashaw's motion to reverse the Commissioner's decision (Doc. 16), and the Commissioner's motion to affirm the same (Doc. 19).  For the reasons stated below, the Court DENIES Bashaw's motion, and GRANTS the Commissioner's motion.

**Background**

Bashaw was 48 years old on his alleged disability onset date of May 1, 2008.  He has a GED, and has worked as a carpenter, a stage manager/coordinator, and a painter supervisor.  He is divorced and has a child who does not live with him.  (AR 759.)  On

the date of the administrative hearing, he was living with his sister and brother-in-law. (AR 35.)

Bashaw suffers from chronic neck and back pain, as well as pain radiating through his shoulders and into his upper arms, elbows, and hands. He also has occasional numbness in his hands and fourth and fifth fingers. He has been diagnosed with cervical degenerative disc disease, bilateral carpel tunnel syndrome ("CTS"), and bilateral cubital tunnel syndrome. (AR 567, 657, 784.) He has also been diagnosed with alcohol dependence and an opioid-related disorder, and tested positive for cocaine during the alleged disability period, resulting in his discharge from at least one medical practice. (AR 764–65, 811, 917.) Since 2008, Bashaw has had surgeries on both wrists and both elbows, epidural injections, splints, physical therapy, and chiropractic treatment. He has also been prescribed numerous medications including narcotics such as oxycodone, Percocet, and fentanyl. Bashaw claims that none of these treatments or medications has relieved his pain or increased his mobility on a long-term basis.

In March 2010, Bashaw protectively filed applications for social security income and disability insurance benefits. Therein, he alleges that, starting on May 1, 2007, he has been unable to work due to neck and upper shoulder pain, causing limited mobility including an inability to lift his arms overhead. (AR 251.) He also claims to have sleeping problems due to arm numbness. (*Id.*) Bashaw's disability application was denied initially and upon reconsideration, and he timely requested an administrative hearing, which was conducted on February 22, 2012 by Administrative Law Judge

("ALJ") Paul Martin.  (AR 27–69.)  Bashaw appeared and testified, and was represented by a non-attorney representative, who amended the alleged disability onset date to May 1, 2008.  (AR 31.)  A vocational expert ("VE") also testified at the hearing.

On March 30, 2012, the ALJ issued a decision finding that, based on his March 2010 disability application, Bashaw was not disabled under the Social Security Act.  (AR 9–19.)  Thereafter, the Appeals Council denied Bashaw's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–3.)  Having exhausted his administrative remedies, Bashaw filed the Complaint in this action on April 22, 2013.  (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Martin first determined that, although Bashaw had worked on a seasonal basis as a stage manager for Champlain Valley Exposition, given the "short duration" of that work, he had not engaged in substantial gainful activity since his alleged disability onset date of May 1, 2008.  (AR 12.)  At step two, the ALJ found that Bashaw had the severe impairments of cervical degenerative disc disease, CTS, and cubital tunnel syndrome.  (*Id.*)  Conversely, the ALJ found that Bashaw's hypertension was non-severe.  (*Id.*)  At step three, the ALJ found that none of Bashaw's impairments, alone or in combination, met or medically equaled a listed

4

impairment.  (*Id.*)  Next, the ALJ determined that Bashaw had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except as follows:

> [Bashaw] may occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; sit, stand, and walk up to six hours each in an eight-hour day; occasionally climb ladders and frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; only occasionally reach overhead bilaterally; and handle objects on a frequent but not constant basis.

(AR 13.)  Given this RFC, the ALJ found that Bashaw was unable to perform his past relevant work as a carpenter, a stage manager/coordinator, a clerical helper, or a painter supervisor.  (AR 17–18.)  Based on testimony from the VE, however, the ALJ determined that Bashaw could perform other jobs existing in significant numbers in the national economy, including representative occupations such as order caller, dispatcher, and courier.  (AR 18–19.)  The ALJ concluded that Bashaw was not disabled under the Social Security Act.  (AR 19.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Bashaw contends the ALJ erred in his analysis of the opinions of treating physician Dr. Andrew Saal and in his assessment of Bashaw's credibility. The Commissioner disagrees, asserting that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards. For the following reasons, the Court finds in favor of the Commissioner.

6

## I.      The ALJ's Analysis of Dr. Saal's Opinions Was Proper.

In February 2012, Bashaw's treating physician, Dr. Andrew Saal, completed a Medical Source Statement ("MSS") regarding Bashaw's ability to do physical work-related activities.  (AR 979-88.)  Therein, Dr. Saal recorded that: Bashaw stated he had extreme limitations in his ability to concentrate due to pain; Bashaw was able to lift up to 20 pounds occasionally and up to 10 pounds frequently; Bashaw stated he could stand and walk for two-to-six hours in a workday; and Bashaw could sit for about six hours in a workday but needed to periodically lay down to relieve pain or discomfort.  (AR 979–80.)  Dr. Saal also noted that Bashaw stated he was limited in his ability to push and pull with his upper extremities, and was limited in his ability to reach in any direction, handle, finger, and feel, such that he could spend only less than one-third of the workday doing these activities.  (AR 981.)  Dr. Saal added that, although Bashaw had a "long history of neck pain in [his] chart," he had known Bashaw for only "4-5 months."  (AR 982.)  Finally, Dr. Saal stated that Bashaw's "described limitations due to neck pain and upper arm weakness ha[d] been progressing and ha[d] created significant limitations in his ability to work," but Bashaw was "hopefully to have surgery in [the] coming months" and it was "too early to predict long[-]term outcomes."  (AR 983.)

Under the "treating physician rule," a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  20 C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993).  The opinion

of a treating physician is not afforded controlling weight, however, where the opinion is not consistent with other substantial evidence in the record. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2). An ALJ who opts against affording controlling weight to a treating physician opinion must consider various regulatory "factors" to determine how much weight to give that opinion. 20 C.F.R. § 404.1527(c). These factors include the length of the treatment relationship, the frequency of examination, the physician's area of specialty, whether the opinion is supported, and whether the opinion is consistent with the record as a whole. *Id.*; *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417 (W.D.N.Y. 2006) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)). The ALJ must also "give good reasons" in his decision for the weight afforded to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *see Schaal v. Apfel*, 134 F.3d 496, 503–04 (2d Cir. 1998).

Here, the ALJ found Dr. Saal's opinion that Bashaw was able to perform less than the full range of light work to be consistent with the ALJ's RFC determination. (AR 17.) Nonetheless, the ALJ afforded "little weight" to Dr. Saal's opinions on the grounds that: (1) Dr. Saal specifically stated in the MSS that his opinions were "based on [Bashaw's] subjective statements and not on [Dr. Saal's] medical expertise as a treating physician and his personal observations of [Bashaw]"; (2) Dr. Saal had been treating Bashaw for only four-to-five months prior to completing the MSS, and stated that he could not make an opinion on Bashaw's long-term prognosis; and (3) Dr. Saal's opinions regarding Bashaw's limited ability to stand, walk, and engage in manipulative activities are

inconsistent with the record and unsupported by objective medical evidence or any other medical opinions.  (*Id.*)

After careful review of the record, the Court finds that the ALJ properly applied the treating physician rule and gave good reasons for his decision to afford little weight to Dr. Saal's opinions.  Most importantly, as recognized by the ALJ, Dr. Saal's opinions are not particularly informative, given their explicit reliance on Bashaw's own statements rather than on medical evidence.  Dr. Saal unambiguously entwined his opinions with the credibility of Bashaw's complaints of pain and functional limitation, handwriting the following statements next to several typewritten boxes contained in the MSS: "[p]atient states," "due to pain," "per [patient]," and "his described limitations."  (AR 979–81, 983.)  Dr. Saal also explicitly qualified his opinions by stating that he "ha[d] only known [Bashaw] for 4–5 months," and that his opinions were based on "chart review."  (AR 982, 983.)  The ALJ properly considered these factors—i.e., the length of Dr. Saal's treating relationship with Bashaw and the supportability of Dr. Saal's opinions—in assessing the value of those opinions.  Although the Second Circuit has held that it is the nature, and not the length, of the treating relationship that is controlling for purposes of evaluating a treating physician's opinion, *see Simmons v. U.S. R.R. Retirement Bd.*, 982 F.2d 49, 55 (2d Cir. 1992), here, Dr. Saal himself qualified his opinions by stating that he had "only" known Bashaw for four-to-five months and by consistently recording that his opinions were based on Bashaw's own statements rather than on an extensive treatment relationship.

Bashaw contends that Dr. Saal's opinions should have been afforded "controlling weight" because they are well supported by medically acceptable clinical and laboratory diagnostic techniques, including for example a bone scan and CT scan showing inflammation on the cervical spine and degenerative disc disease, an MRI showing moderate spinal stenosis in the cervical spine, and examination findings of tenderness to palpation along the cervical spine and decreased range of motion in the neck. (*See, e.g.*, AR 966, 976–78, 1002.)  The ALJ considered this evidence, however, and found that, despite these findings, other objective evidence indicated that Bashaw had normal clinical findings, including full strength, normal reflexes, strong grasp, and normal station and gait. (AR 14.)  Given this evidence, as well as Bashaw's questionable credibility (discussed below) and the agency consultants' opinions (also discussed below), the ALJ concluded that, "although [Bashaw] clearly suffers from . . . pain, there is insufficient objective medical evidence and clinical findings to support a finding of disability." (AR 13.)  The Court finds that substantial evidence supports the ALJ's analysis. (*See, e.g.*, AR 43, 426, 635, 664, 916, 939, 958, 1003.)

Bashaw argues that Dr. Saal's opinions are supported by treating physician Dr. Bruce Tranmer's February 2012 examination findings and statement that Bashaw "might benefit from surgery." (AR 1002.)  But Dr. Tranmer stated that the surgery was "elective," and that he would not proceed with it "unless [Bashaw] is committed to stop smoking and has [done] so for at least a month." (*Id.*)  Dr. Tranmer then stated that he did not plan to see Bashaw again until "about 6 to 8 weeks." (*Id.*)  As of the February

10

2012 administrative hearing, Bashaw was hoping to have the surgery scheduled, but he had not yet stopped smoking.  (AR 46.)

The ALJ properly considered that Dr. Saal's opinions are not entirely consistent with those of several other medical experts, including non-examining agency consultants Drs. Leslie Abramson, Geoffrey Knisely, and Ann Fingar.  (AR 16–17; *see* AR 82–93, 501–03, 680–82.)  The ALJ gave "significant weight" to these opinions on the grounds that they are well supported by the medical evidence of record and consistent with each other; and no treating source other than Dr. Saal provided contrary evidence or opinions.  (AR 16–17.)  Notably, the ALJ incorporated into his RFC determination those two of the three agency consultant opinions which found that Bashaw had a limited ability to reach overhead bilaterally.[1]  To the extent that Bashaw claims the ALJ should have also incorporated Dr. Abramson's opinion that Bashaw was limited in his ability to push and/or pull (AR 501), at most this was harmless error, given the VE's testimony that the jobs Bashaw could perform would not be affected by a pushing/pulling limitation (AR 64).

Bashaw argues that the agency consultants' opinions should not have been given significant weight because they were made before Dr. Saal became Bashaw's treating physician and thus before Dr. Saal's MSS was added to the record.  Generally, in cases where the consulting physicians have not reviewed all of the claimant's relevant medical

---

[1] Based on their respective reviews of the record, Dr. Abramson opined in December 2008 that Bashaw was limited to only occasional overhead reaching bilaterally (AR 503); Dr. Knisely opined in July 2010 that Bashaw had no reaching limitations (AR 682); and Dr. Fingar opined in January 2011 that Bashaw's ability to reach overhead was limited (AR 91).  The ALJ adopted Dr. Abramson's and Dr. Fingar's opinions regarding Bashaw's reaching limitations by including in his RFC determination a limitation for "only occasional[] reach[ing] overherad bilaterally."  (AR 13.)

11

information, their opinions will not override those of the treating physicians. *See Tarsia v. Astrue*, 418 F. App'x 16, 18 (2d Cir. 2011). But where the consultant opinions are supported by the record and there is no evidence of a new diagnosis or a worsening of the claimant's condition after the consultant opinions were made, the ALJ may rely on them. *See Charbonneau v. Astrue*, No. 2:11-CV-9, 2012 WL 287561, at *7 (D. Vt. Jan. 31, 2012). Here, as noted above and in the ALJ's decision, the agency consultants' opinions are supported by each other and by the record as a whole, and the record does not indicate a substantial worsening of Bashaw's condition after they were made. Moreover, Dr. Saal's opinions are the only opinions containing limitations more severe than the consultants' opinions, and they were properly discounted for the reasons discussed above. Thus, it was not improper for the ALJ to rely on the agency consultants' opinions.

For these reasons, the Court finds that the ALJ did not err in affording little weight to Dr. Saal's opinions. The Court further finds that the propriety of the ALJ's analysis of Dr. Saal's opinions is tied to the ALJ's assessment of Bashaw's credibility, which the Court finds was legally proper and supported by substantial evidence, as discussed below.

## II.     The ALJ's Credibility Assessment Is Supported by Substantial Evidence.

The ALJ found that Bashaw's statements concerning the intensity, persistence, and limiting effects of his symptoms are "not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." (AR 13.) It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). When evaluating the credibility of a claimant's statements, the ALJ must consider the entire

case record and give specific reasons for the weight given [thereto]." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). If the ALJ's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints, even if substantial evidence supporting the claimant's position also exists. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").

Here, the ALJ gave several specific reasons in support of his negative assessment of Bashaw's credibility, including:

- Bashaw testified at the administrative hearing that he had not used drugs other than marijuana since 1993, but the record "clearly shows otherwise." (AR 15.) The ALJ stated: "[Bashaw's] denial of drug use is not credible . . ., and it makes his testimony as a whole less credible." (*Id.*)
- "[Bashaw's] ability to perform [seasonal work coordinating the set-up of stages on fairgrounds for 17 or 18 days each year] further undermines [Bashaw's] credibility concerning the effects of his impairments." (AR 16.)
- "[Bashaw] has been able to perform significantly active tasks after the alleged onset date including performing some freelance carpentry work . . . and even play[ing] golf." (*Id.*)

Substantial evidence supports these findings. Regarding Bashaw's drug use, the record indicates the following: (1) Bashaw tested positive for cocaine in March 2010, August 2011, and December 2011, resulting in his discharge from Thomas Chittenden Health

13

Center; (2) Bashaw presented to an emergency room appearing over-medicated on alcohol, narcotics, or both in August 2010; and (3) Bashaw was taking opiates given to him by a friend in February 2009.  (*See* AR 723, 764 ("sometimes takes Rockiset [sic], an opiate not prescribed that he gets from a friend"), 860, 864, 917 ("underwent random urine drug screening and tested positive for cocaine," "was discharged from the practice"), 923, 940, 972, 1007 ("told to get pain medications prescribed by his PCP[;] Dr. Tranmer will not prescribe anymore").)  Also, a November 2011 treatment note indicates that Bashaw used 120 Percocet pills in less than a two-week period and then inappropriately attempted to obtain an opioid "refill" from a walk-in care center.  (AR 974.)

     Despite this evidence, Bashaw testified at the February 2012 administrative hearing that the last time he used drugs other than marijuana was "probably back in 1993."  (AR 36.)  When the ALJ asked Bashaw about his discharge from "The Family Practice" due to a positive cocaine test, Bashaw stated: "I don't know what happened there, I did not knowingly do cocaine."  (AR 36–37.)  And when the ALJ asked Bashaw about taking prescription medications from a friend, Bashaw stated: "I am not aware of that," and: "Oh, that was when I was living with my nephew . . . and he was giving me my medication and I wasn't aware that I was taking that."  (AR 38.)  Considering this testimony as well as the record as a whole, the ALJ reasonably stated that Bashaw "is less than credible in his discussion of drug use," which made it difficult for the ALJ "to afford significant weight to [Bashaw's] testimony that his various narcotics medications and other treatment methods are insufficient to stem symptoms."  (AR 15.)  The ALJ also

14

reasonably stated as follows: "[Bashaw's] lack of credibility concerning his testimony of drug use, both prescription and other types of drugs, makes his allegations of insufficient control with prescribed medications less than credible." (AR 16.) It was proper for the ALJ to consider Bashaw's lack of credibility regarding his drug use, as well as Bashaw's drug-seeking behavior, in assessing the severity of Bashaw's pain. As recently held by this Court, if the record reflects that a claimant's goal may have been to obtain prescription pain medication rather than to relieve symptoms, it is reasonable for the ALJ to conclude that the claimant "was more likely to overstate the pain he was actually experiencing." *Sears v. Astrue*, Civil Action No. 2:11–CV–138, 2012 WL 1758843, at \*5 (D. Vt. May 15, 2012) (collecting cases).

      The ALJ also based his credibility assessment on Bashaw's seasonal work as a stage manager/coordinator at an annual state fair. (AR 16.) The ALJ accurately described Bashaw's work in this job as follows: "[Bashaw] is charged with coordinating the set-up of stages on the fairgrounds. This job lasts for about seventeen or eighteen days each year, totaling about 200 hours, with hourly wages totaling $16.00 to $16.50. While on the job, [Bashaw] lives on[]site in a trailer." (*Id.* (citations omitted).) At the administrative hearing, Bashaw explained that he was "in charge of giving people the work to do and making sure it [was] completed." (AR 40.) He further stated that he would usually get up early and check people in, and then he would be outside supervising up to 60 people at a time. (AR 41–42.) Bashaw argues that this work does not support an adverse credibility assessment, given that it required minimal physical activity and he was allowed to rest in his trailer during the workday. (Doc. 16-1 at 20; Doc. 20 at 9.) He

15

testified at the administrative hearing, however, that he had been doing this job since the late 1990s under similar conditions. (AR 42, 49–51.) It was appropriate for the ALJ to consider Bashaw's ability to do this job during the alleged disability period, even if it was only on a seasonal basis and even if it required minimal physical activity and allowed lengthy breaks. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("[T]he fact that [the claimant] could perform some work cuts against his claim that he was totally disabled.").

The ALJ also based his credibility assessment on Bashaw's performance of "active tasks" such as freelance carpentry work, mowing the lawn, and playing golf. (AR 16 (citing AR 281–85).) Bashaw claims the ALJ erred in relying on these activities because he was unable to perform them after May 2008, when his symptoms worsened. (Doc. 16-1 at 21.) Bashaw also claims the ALJ should not have relied on his May 2008 Function Report (AR 281–88), which was completed less than one month after the amended alleged disability onset date. (Doc. 16-1 at 21.) Bashaw's attorney argues: "Mr. Bashaw's activities in May 2008 have very little relevance to his abilities in 2012 and the increased limitations which the ALJ noted are substantially supported by his worsening symptoms which eventually required surgery." (*Id.* at 22.) First, Bashaw's representative at the administrative hearing amended the alleged disability onset date to May 1, 2008, so it was certainly proper for the ALJ to consider Bashaw's activities starting on that date.

16

Second, it is well established that an ALJ may consider a claimant's daily activities in assessing the claimant's credibility. *See, e.g.*, *Calabrese v. Astrue*, 358 F. App'x 274, 278 (2d Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(3)). Therefore, it was proper for the ALJ to consider Bashaw's reporting that, during at least a portion of the alleged disability period, he was able to mow the lawn if not in pain, golf on occasion, and do freelance carpentry work when available and when not in pain, especially considering that these activities involve reaching, the movement that Bashaw claims is most limited by his impairments. (*See* AR 280–86, 291–92.) Third, Bashaw's October 2008 Function Report indicates that he still was able to perform all personal care activities, do light cleaning, and ride the lawn mower at that time. (AR 311–13.) And a May 2010 Function Report indicates that, although Bashaw could no longer golf, he was able to wash dishes, vacuum, do laundry, cook meals, go food-shopping weekly and to the store to buy a newspaper daily, and attend church occasionally. (AR 357–61.) Although these activities may not be described as robust, it was proper for the ALJ to consider them—together with the rest of the record—in assessing Bashaw's credibility.

In sum, the ALJ clearly stated in the decision his reasons for discrediting Bashaw's allegations of disabling pain. There is substantial evidence in the record to support these reasons, including Bashaw's ability to perform some work and other activities, and Bashaw's credibility issues regarding his drug use. Although the ALJ was "required to take [Bashaw's] reports of pain and other limitations into account," he was "not required to accept [Bashaw's] subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ had discretion

17

to weigh the credibility of Bashaw's testimony "in light of the other evidence in the record." *Id.* While another fact-finder could view the evidence in a light more favorable to Bashaw, the court may not substitute its own credibility determination for that of the ALJ's unless the latter was "patently unreasonable." *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997).

## Conclusion

The record clearly demonstrates that Bashaw suffers from neck and shoulder pain with occasional radiation into his arms and residual symptoms from CTS and cubital tunnel syndrome. Objective medical evidence substantiates this pain but says little about its severity or resulting functional limitations. The only relevant treating physician opinions are those made by Dr. Saal, but those opinions are explicitly conditioned on Bashaw's credibility, which the ALJ found questionable. Because the Court finds that: (a) the ALJ's credibility determination is legally proper and supported by substantial evidence; and (b) the ALJ followed the treating physician rule and gave good reasons for affording little weight to Dr. Saal's opinions; remand is not required. Accordingly, the Court DENIES Bashaw's motion (Doc. 16), GRANTS the Commissioner's motion (Doc. 19), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 16th day of May, 2014.

/s/ John M. Conroy  
John M. Conroy  
United States Magistrate Judge